# ATTACHMENT A

 CT Corporation

**Service of Process Transmittal**
07/10/2014
CT Log Number 525296133

| | |
|---|---|
| **TO:** | Glenda Strong<br>Kia Motors Manufacturing Georgia, Inc.<br>7777 KIA Parkway<br>West Point, GA 31833 |
| **RE:** | **Process Served in Georgia** |
| **FOR:** | Kia Motors Manufacturing Georgia, Inc. (Domestic State: DE) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Robert D. Tyler, Pltf. vs. Kia Motors Manufacturing Georgia, Inc., Dft. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Jury Demand |
| **COURT/AGENCY:** | Fulton County Superior Court, Fulton, GA<br>Case # 2014CV248600 |
| **NATURE OF ACTION:** | Employee Litigation - Wrongful Termination - 12/16/2010 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Atlanta, GA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 07/10/2014 at 14:26 |
| **JURISDICTION SERVED :** | Georgia |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service of this summons upon you, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Regina S. Molden<br>Molden & Holley, LLC<br>Peachtree Center - Harris Tower<br>233 Peachtree St., NE<br>Suite 1245<br>Atlanta, GA 30303<br>404-324-4500 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 07/10/2014, Expected Purge Date: 07/15/2014<br>Image SOP<br>Email Notification, Glenda Strong glenda.strong@kmmgusa.com<br>Email Notification, Deborah Walker deborah.walker@kmmgusa.com |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>Tyeasha Harris<br>1201 Peachtree Street,N.E.<br>Suite 1240<br>Atlanta, GA 30361<br>404-965-3840 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

COPY

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

FILED IN OFFICE

JUL 0 7 2014

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

| | | |
|---|---|---|
| ROBERT D. TYLER | ) | |
| | ) | |
| | ) | |
| | ) | Civil Action File No.: |
| Plaintiff, | ) | |
| | ) | 2014CW248600 |
| v. | ) | |
| | ) | |
| KIA MOTORS MANUFACTURING | ) | JURY TRIAL |
| GEORGIA, INC., | ) | DEMANDED |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR DAMAGES

**COMES NOW**, Robert D. Tyler ("Tyler" or "Plaintiff") and through

the undersigned counsel of record, files this Complaint against Kia Motors

Manufacturing Georgia Inc. ("Defendant"), showing the Court as follows:

### Jurisdiction

1.

This cause of action is brought due to discrimination on the basis of

retaliation in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights

Act of 1964 as amended, 42 U.S.C. §§ 2000e *et seq.* (hereinafter "Title

VII"). The Court has subject matter jurisdiction over this matter.

2.

Venue is proper in this Court as Defendant has its registered agent for

service in Fulton County

## Parties

3

At all times material to this action, Plaintiff was a resident of the

State of Georgia and is entitled to bring actions of this type and nature

4

Defendant Kia Motors Manufacturing Georgia, Inc. is a foreign

corporation authorized to do business within the State of Georgia.

Defendant's principal offices are located at 7777 Kia Parkway, West Point,

Georgia, Troup County, 31833. Defendant may be served upon its registered

agent for service of process, CT Corporation System, at 1201 Peachtree

Street Northeast, Atlanta, Georgia 30361.

5.

Defendant, at all times relevant to Plaintiff's claims, was Plaintiff's

employer.

## Factual Allegations

6.

Plaintiff is a former employee of Defendant who had been employed with Defendant since September 17, 2007, when Plaintiff was hired by the Director of Human Resources and Administration for Defendant, Randy Jackson ("Jackson").

7.

During all relevant times discussed herein, Plaintiff worked for Defendant in the Human Resources department, where Plaintiff's duties included hiring and recruitment of employees, administration of compensation and benefits, policy development and implementation for hourly and salaried employees, conflict resolution, corrective action, performance management, communications, and supplier support.

8.

In order to facilitate his duties with Defendant, Plaintiff frequently maintained electronic documents in duplicate file folders and on his home computer to ensure they would be available if ever needed for recovery for historical purposes, continuous improvement, or for best practice development; and to ensure they were available for work to be performed off-site or at home.

9.

Jackson was aware of Plaintiff's maintenance of electronic documents in duplicate file folders and on his home computer and never protested or attempted to dissuade Plaintiff from continuing this practice.

10.

During the term of his employment with Defendant, Plaintiff consistently received pay increases and promotions based on the exemplary work Plaintiff performed.

11.

Around the time of Plaintiff's hiring, (approximately late September 2007) Jackson informed Plaintiff that he "had to make sure [Plaintiff] controlled the number of African Americans who were hired."

12.

Jackson informed Plaintiff that "he could not let [Defendant] get into the same situation as their sister plant, Hyundai, in Montgomery, Alabama", meaning that the sister plant had approximately 60% African Americans working among the hourly production and maintenance workforce and the Korean executives did not want the percentage of African American employed with Defendant to reach that level.

4

13.

As a result of this discussion, Plaintiff had to regularly report on the percentage of African Americans versus white team members employed with Defendant at least once per quarter.

14.

Sometime in late 2009, Plaintiff was approached by Jackson, who informed Plaintiff that the Korean executives who worked for Defendant Corporation did not want to hire any production candidates who were 50 years old or older.

15.

Plaintiff responded to Jackson that discrimination against older workers was illegal, to which Jackson responded "we have to follow the direction that was given by the Koreans, specifically Kevin Kim (Senior Manager of HR and Training) and K.S. Kim (Vice President of Administration).

16.

As a result of these directions by Jackson, Plaintiff was forced to maintain a Pre-Employment Candidate Review Chart, which included categories for sex, race, and age, and those factors were used to determine who would receive preliminary job offers.

17.

Plaintiff was also forced to adhere to directives from Defendant's Korean executives which denied recommendations for employment for female salaried professionals based solely on their gender.

18.

As a result of these directives, a female employee directly under Plaintiff in the Human Resources department, Andrea Gogel ("Gogel"), was denied the designation Head of Team Relations upon Team Relations split from Human Resources. At the time of the split, Gogel was considered an acting Head of Section for Team Relations, but when Team Relations became a separate department, Gogel did not get the "automatic" designation, whereas Gogel's male counterparts in other departments did.

19.

On or around September 29, 2010, Plaintiff submitted a fourteen page Report of Concerns (the "Report") to Defendant's Korean executives in which Plaintiff detailed his concerns regarding the illegal and unethical hiring practices of Defendant, which included race, age, and gender discrimination.

20.

Upon reviewing the Report, Defendant's managers indicated that they were only interested in reviewing "only a few" of the allegations Plaintiff made.

21.

Upon learning of Defendant's limited interest in the allegations Plaintiff set forth in the Report, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (the "EEOC") in November, 2010.

22.

Following the filing of his complaint with the EEOC, Plaintiff was sent home on December 16, 2010.

23.

Plaintiff was officially terminated from Defendant's employment on January 6, 2011.

## COUNT ONE

## RETALIATION IN VIOLATION OF TITLE VII

24.

Plaintiff reincorporates the above allegations herein by reference.

25.

Plaintiff has brought his claim within 90 days of receipt of his EEOC Right to Sue Letter.

26.

Plaintiff has met all jurisdictional requirements to filing his Retaliation claims.

27.

Defendant was Plaintiff's "employer" as that term is defined under 42 U.S.C. § 2000 *et seq* at the time of the allegations set forth in this Complaint.

28.

Defendant's retaliation against Plaintiff was on account of his submission of the Report, participation in the EEOC charge filing process, and because of Plaintiff's opposition to discrimination to race, age, and gender discrimination in violation of 42 U.S.C. § 1981. But for Plaintiff's acts of submitting the Report and filing an EEOC Charge, Plaintiff would not have been terminated.

29.

Defendant engaged in unlawful retaliation against Plaintiff, in violation of 42 U.S.C. § 2000e et seq., Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

30.

Defendant's retaliatory conduct, in violation of Title VII, caused Plaintiff to suffer a loss of pay, benefits, and prestige.

31.

Defendant's intentional and illegal conduct caused Plaintiff to suffer mental and emotional distress entitling him to compensatory and punitive damages pursuant to 42 U.S.C. § 1981.

## COUNT TWO

### RETALIATION FOR OPPOSING RACE, AGE, AND GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

32.

Plaintiff reincorporates the above allegations herein by reference.

33.

Following Plaintiff's internal complaints of race, age, and gender discrimination and his filing of an EEOC Charge, Defendants prohibited Plaintiff from continuing his practice of maintaining electronic documents in duplicate file folders and on his home computer, despite the fact this practice was not previously discouraged and was essential to Plaintiff's duties.

34.

Defendant's proffered reason for terminating Plaintiff was itself protected activity. Plaintiff's termination occurred less than two months after Plaintiff filed his EEOC Charge and was casually connected to the filing of the EEOC Charge, in that 1) because Plaintiff filed a Charge, he was forced to sign an agreement not to discuss the pending Charge or "similar claims"; and 2) Defendant fired Plaintiff because they believed Plaintiff had downloaded and emailed documents in violation of an agreement that was imposed solely because Plaintiff had filed a Charge with the EEOC.

35.

Defendant's reason for terminating Plaintiff's employment was itself retaliation for protected activity under the participation clause of Title VII's anti-retaliation provisions and violated Plaintiff's right to engage in protected activity.

36.

Defendant's retaliation against Plaintiff was on account of Plaintiff's participation in the EEOC charge filing process and because of Plaintiff's opposition to discrimination based on race, age, and gender in violation of 42 U.S.C. § 1981. But for Plaintiff's act of filing an EEOC Charge, Plaintiff

would not have been terminated.

37.

As a result of Defendant's unlawful conduct, Plaintiff has suffered mental and emotional distress in an amount to be determined at trial by the enlightened conscience of an impartial jury. Plaintiff has also suffered lost wages and the benefit of employment, which Plaintiff seeks to recover from Defendant.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant as follows:

(a)     That this Court declare that Defendant's actions, policies, and practices complained of herein violate the rights of Plaintiff as secured by Federal law;

(b)     Defendant be permanently enjoined from future discriminatory acts relative to discrimination based on age or race, and for opposing such discrimination;

(c)     Defendant be ordered to pay Plaintiff back pay in an amount to compensate Plaintiff for lost wages;

(d)     Defendant be ordered to reinstate Plaintiff to an equivalent or greater position as that held by Plaintiff at the time of his

11

termination;

(e)     Defendant be ordered to compensate, reimburse and make whole Plaintiff for all the benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to pay, benefits, insurance costs, training, promotions and seniority;

(f)     Plaintiff be awarded compensatory damages;

(g)     Plaintiff be awarded punitive damages;

(h)     Plaintiff recover reasonable attorney's fees including litigation expenses and costs;

(i)     Plaintiff recover interest on the back pay at the legal rate; and Such other relief as the Court deems proper and just.

## Jury Demand

Plaintiff herein requests trial by jury of all issues in this action.

Respectfully submitted this ___3rd___ day of July, 2014.

MOLDEN & HOLLEY, LLC

Regina S. Molden
Georgia Bar No. 515454
David Heath Williamson
Georgia Bar No. 448218
Peachtree Center – Harris Tower
233 Peachtree Street, N.E. Suite 1245
Atlanta, Georgia 30303
Telephone: (404) 324-4500
Facsimile: (404) 324-4501
Email: rmolden@moldenholley.com
Attorneys for Plaintiff